UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KHUMAR RAMBHAROSE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>PARTS AUTHORITY, LLC, PARTS AUTHORITY-WAW LLC, AUTOMOBILE WORKFORCE LLC, GENERAL WORKFORCE INC., and VISHWANATH INDERKARRAN a/k/a DERICK KARRAN,<br><br>Defendants. | : | **CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff Khumar Rambharose ("Plaintiff" or "Rambharose"), on behalf of himself and all others similarly situated, by his attorneys Pechman Law Group PLLC, complaining of Defendants Parts Authority LLC, Parts Authority-WAW LLC, Automobile Workforce LLC, General Workforce Inc., and Vishwanath Inderkarran a/k/a Derick Karran (collectively, "Defendants"), alleges:

**NATURE OF THE COMPLAINT**

1. Throughout his employment at Parts Authority's Bronx Warehouse, Rambharose and other similarly situated warehouse workers worked up to ninety-nine hours per workweek, but were paid regular hourly wage rates that fell below the statutory minimum wage rate and were not compensated with overtime pay for hours worked over forty each workweek. Defendants further failed to provide Rambharose and similarly situated warehouse workers with: (1) spread-of-hours pay when they worked shifts spanning over ten hours; (2) wage notices at their time of hiring and when their wage rates changed; and (3) accurate wage statements with each payment of wages.

2. Defendants engaged in a wage theft scheme whereby purported "subcontractors" hired workers for Parts Authority's Bronx Warehouse who were cheated out of their minimum wages and overtime pay. This blatantly unlawful strategy was designed to enable Parts Authority to save millions of dollars in payroll at the expense of hundreds of exploited workers.

3. Rambharose brings this action on behalf of himself and all similarly situated warehouse workers (the "Warehouse Workers") seeking declaratory and injunctive relief and to recover unpaid minimum and overtime wages, spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York Labor Law § 190, *et seq.* ("NYLL"), and the NYLL's Wage Theft Prevention Act, NYLL §§ 195, 198 ("WTPA").

## JURISDICTION

4. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and it has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367.

## VENUE

5. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events and omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

**Plaintiff Khumar Rambharose**

6. Rambharose resides in Queens County, New York.

7. Defendants have employed Rambharose from approximately December 2021 to present.

**The Parts Authority Defendants**

8. Defendant Parts Authority LLC is a Delaware limited liability company registered in New York.

9. Defendant Parts Authority-WAW LLC ("Parts Authority WAW") is a New York limited liability company.

10. Parts Authority LLC and Parts Authority WAW (collectively, the "Parts Authority Defendants") own, operate, and do business as Parts Authority, a "national distributor of automotive replacement parts, tools/equipment, and transmissions." *See* https://partsauthority.com/about (last accessed Dec. 22, 2025).

11. Parts Authority has annual revenues of over $700 million. *See* https://www.dnb.com/business-directory/company-profiles.parts_authority_llc.280008843b68b80137601dcff3e98258.html (last accessed Dec. 22, 2025).

12. Kohlberg & Company LLC, a private equity firm with seventeen billion dollars in assets under management, owns a majority stake in Parts Authority. *See* https://www.kohlberg.com/kohlberg-company-signs-definitive-agreement-to-acquire-a-majority-stake-in-parts-authority/ (last accessed Dec. 22, 2025); *see also* https://www.kohlberg.com/#:~:text=1987,Investment%20Partners (last accessed Dec. 22, 2025).

13. The Parts Authority Defendants jointly own and operate the Parts Authority warehouse located at 1601 Bronxdale Avenue, Bronx, New York 10462 (the "Bronx Warehouse"), where Rambharose and the Warehouse Workers are employed.

14. United States Occupational Health and Safety ("OSHA") records reflect that Parts Authority LLC operates the Bronx Warehouse.

15. Parts Authority WAW maintains a lease for the Bronx Warehouse premises.

16. The Parts Authority Defendants have employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person within the meaning of the FLSA.

17. In the three years prior to the filing of this Complaint, the Parts Authority Defendants, individually and collectively, have had an annual gross volume of sales made or business done in excess of $500,000.

18. The Parts Authority Defendants are employers within the meanings of the FLSA and NYLL, and employed Rambharose and the Warehouse Workers.

19. The Parts Authority Defendants have been accused of similar wage-theft schemes which have been the subject of both federal litigation and an investigation by the United States Department of Labor. *Johnson v. Parts Auth., LLC*, No. 16 Civ. 6852 (DLI) (RML) (E.D.N.Y.) (plaintiffs alleged Parts Authority and related sub-contractors misclassified delivery drivers and failed to pay overtime and minimum wages); *Diaz et al. v. Mich. Logistics Inc. et al.*, No. 2:15 Civ. 1415 (LDW) (ARL) (E.D.N.Y.) (same); *Henao et al. v. Parts Auth., LLC, et al.*, No. 19 Civ. 10720 (LGS) (BCM) (S.D.N.Y.) (same); U.S. DEPARTMENT OF LABOR, "Department of Labor Obtains Judgment Ordering Auto Parts Seller, Logistics Company to Pay $5.6 Million to 1,398 Misclassified Drivers," (https://www.dol.gov/newsroom/releases/whd/whd20230112) (last accessed Dec. 22, 2025).

20. In a previous wage theft case involving two workers performing work at the Bronx Warehouse, the two workers obtained judgments for a total of $80,000 plus attorneys' fees and costs. *See Cranmore v. Parts Auth., LLC et al.*, No. 1:24 Civ. 5842 (LJL) (S.D.N.Y.).

**The Workforce Defendants**

21. Defendant Automobile Workforce LLC ("Automobile Workforce") is a New York limited liability company with its headquarters and service of process address located at 96-16 101st Ave, Ozone Park, New York 11416.

22. Defendant General Workforce Inc. ("General Workforce," and together with Automobile Workforce, the "Workforce Defendants") is a New York corporation with its headquarters and service of process address located at 96-16 101st Ave, Ozone Park, New York 11416.

23. Automobile Workforce and General Workforce jointly operate as Workforce, a company which recruits and provides Warehouse Workers for Parts Authority.

24. On information and belief, Individual Defendant Vishwanath Inderkarran a/k/a Derick Karran exercises control and dominion over Automobile Workforce and General Workforce and operates them jointly as "Workforce."

25. Inderkarran is the sole registered agent of Automobile Workforce reflected in New York Department of State entity filings.

26. Inderkarran is the Chief Executive Officer of General Workforce.

27. In a prior wage theft case, Inderkarran, as Chief Executive Officer, executed a settlement agreement on behalf of Automobile Workforce LLC d/b/a General Workforce. *See Settlement Agreement* at 3, *Naraine v. Automobile Workforce LLC*, No. 18 Civ. 6696, ECF No. 15-1 (SMG) (E.D.N.Y. May 3, 2019).

28. On February 4, 2022, a judgment was entered in the Supreme Court of the State of New York, County of Queens, in favor of the Chair of the Workers' Compensation Board of the State of New York and against Vishwanath Inderkarran d/b/a Automobile Workforce (the "Workers' Compensation matter").

29. On July 18, 2025, a Satisfaction of Judgment was entered in the Workers' Compensation matter noting that Vishwanath Inderkarran d/b/a Automobile Workforce had satisfied the judgment.

30. Throughout Rambharose's employment, Defendants paid Rambharose's and the Warehouse Workers' wages on checks issued by Automobile Workforce LLC.

31. Inderkarran signs checks issued to Rambharose and the Warehouse Workers by Automobile Workforce LLC.

32. On information and belief, Inderkarran maintains time and pay records for work performed by Rambharose and the Warehouse Workers at the Bronx Warehouse.

33. Inderkarran exercised sufficient control over the Workforce Defendants' operations and Rambharose's and the Warehouse Workers' employment to be considered their employer.

34. The Workforce Defendants have employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person within the meaning of the FLSA.

35. In the three years preceding the filing of this Complaint, the Workforce Defendants, individually and collectively, have had an annual gross volume of sales made or business done in excess of $500,000.

36. The Workforce Defendants are employers within the meaning of the FLSA and NYLL and employed Rambharose and the Warehouse Workers.

## FACTUAL ALLEGATIONS

37. From approximately December 2021 through mid-2022, Defendants employed Rambharose as a car parts stocker. In mid-2022, Defendants assigned Rambharose to work as a Team Lead in the Internet Department, which is his present position.

38. While his schedule varied, from approximately January 2022 through July 2025, Rambharose regularly worked: (1) thirteen-hour shifts on weekdays from 7:00 a.m. to 8:00 p.m., four days per week; and (2) two seven-hour shifts, from 8:00 a.m. to 3:00 p.m. (Saturday and Sunday). Rambharose regularly worked six days per week, totaling approximately sixty-six hours per week.

39. However, during this period Defendants frequently required Rambharose to extend his weekday shifts until 11:00 p.m., and weekend shifts until 5:00 p.m. ("extended hours"). This resulted in Rambharose frequently working approximately eighty-two hours per workweek.

40. Moreover, during busy periods, Defendants required Rambharose to work extended hours seven days per week, with Rambharose working up to ninety-nine hours per workweek.

41. From approximately July 2025 through October 2025, Rambharose regularly worked: (1) seven-hour shifts on weekdays from 8:00 a.m. to 3:00 p.m., five days per week (Monday through Friday); and (2) a seven-hour shift, from 8:00 a.m. to 3:00 p.m. (Saturday and/or Sunday). Rambharose regularly worked six days per week, totaling approximately forty-two hours per week. However, during this period Defendants frequently required Rambharose to extend his shifts and work additional hours.

42. From early November 2025 to present, Rambharose has regularly worked between twenty-nine and forty hours per workweek.

43. Throughout his employment, Defendants paid Rambharose and other Warehouse Workers subminimum wages on a straight-time basis. For example:

a. From approximately January 2022 through January 2023, Defendants paid Rambharose $12 per hour for all hours worked, including hours worked over forty per workweek;

b. From approximately February 2023 through May 2024, Defendants paid Rambharose $13 per hour for all hours worked, including hours worked over forty per workweek;

c. From approximately June 2024 through June 2025, Defendants paid Rambharose $14 per hour for all hours worked, including hours worked over forty per workweek;

d. From approximately July 2025 to present, Defendants have paid Rambharose $15 per hour for all hours worked, including hours worked over forty per workweek.

44. Rambharose's and the Warehouse Workers' regular hourly wage rates fell below the statutory minimum wage rates established for large employers in New York City throughout Rambharose's employment with Defendants, which were: $15 per hour from 2022 through 2023, $16 per hour in 2024, and $16.50 per hour in 2025.

45. Defendants failed to pay Rambharose and the Warehouse Workers overtime wages for hours worked over forty per workweek, and instead paid them "straight time" rates for those hours.

46. Defendants failed to pay Rambharose and the Warehouse Workers spread-of-hours pay, an additional hour's pay at the basic minimum wage rate, on days when they worked shifts spanning in excess of ten hours.

47. Defendants did not provide Rambharose and the Warehouse Workers with a wage notice at their time of hire or when their rates of pay changed.

48. Defendants paid Rambharose and the Warehouse Workers wages on a weekly basis by checks issued by Automobile Workforce LLC.

49. Defendants did not provide Rambharose and the Warehouse Workers with accurate wage statements accompanying each payment of wages.

50. Defendants intentionally failed to provide wage notices and statements to Rambharose and the Warehouse Workers in violation of the WTPA to conceal the precise number of regular and overtime hours that Rambharose and the Warehouse Workers worked and the statutory minimum and overtime wages rates to which they were entitled.

51. Defendants further concealed their practice of wage underpayments by failing to provide Rambharose and the Warehouse Workers with required wage notices under the WTPA at their time of hire, which would have permitted Rambharose and the Warehouse Workers the to understand and advocate for their rights to statutory minimum and overtime wages.

52. Defendants' WTPA violations led to and formed part of Defendants' scheme to deprive Rambharose and the Warehouse Workers of their minimum and overtime wages due as alleged in this Complaint.

**Defendants Jointly Employed Rambharose and the Warehouse Workers**

53. Throughout Rambharose's and the Warehouse Workers' employment, the Parts Authority and Workforce Defendants engaged in a subcontracting scheme designed to avoid including Rambharose and the Warehouse Workers on Parts Authority's payroll and deny them required minimum and overtime wages.[1]

54. Rambharose and the Warehouse Workers have performed the same jobs at the same locations under the supervision of the same managers as Direct Parts Authority Workers.

[1] Parts Authority employees paid on Parts Authority payroll are referred to in this Complaint as "Direct Parts Authority Workers."

55. Defendants employ Warehouse Workers and Direct Parts Authority Workers performing the same jobs under the management of the same supervisors throughout all departments within the Bronx Warehouse as part of their scheme to deny Warehouse Workers minimum and overtime wages.

56. Warehouse Workers work in the same workspaces, eat in the same lunchroom, and use the same bathrooms as Direct Parts Authority Workers.

57. Rambharose and the Warehouse Workers utilize Parts Authority scanners, carts, laptop computers, desktop computers, label printers, regular printers, bubble machines, box machines, gloves, and vests to complete their work duties. This is the same equipment utilized by Direct Parts Authority Workers who perform the same duties working side-by-side with the Warehouse Workers.

58. Defendants provided Rambharose, the Warehouse Workers, and the Direct Parts Authority Workers with a key fob or NFC passkey to access the Bronx Warehouse.

59. The Parts Authority and Workforce Defendants jointly hold and exercise the power and authority to control the terms and conditions of Rambharose's and the Warehouse Workers' employment.

60. For example, while Rambharose was hired by Workforce manager "Raj," his day-to-day duties were directed and supervised by Parts Authority managers.

61. From January 2022 to present, Parts Authority Manager Latchman (Neil) Singh ("Singh"), has exercised ultimate authority over Rambharose's and the Warehouse Workers' employment in the Internet Department. For example, Singh:

a. controlled the schedules of Rambharose and other Warehouse Workers in the Internet Shipping Department and determined what time their shifts would end on a daily basis;

b. assigned and directed the work locations, assignments, and duties of Rambharose and other Warehouse Workers in the Internet Shipping Department;

c. suspended Warehouse Workers who failed to appear for work on the Labor Day holiday in 2025;

d. held the authority to terminate the employment of Rambharose and the Warehouse Workers.

62. From January 2022 through mid-2022, Rambharose was also supervised by Parts Authority Manager Satesh Moosai ("Satesh"). Satesh assigned Rambharose and the Warehouse Workers to work in different zones in the Internet Department, directed the work duties of Warehouse Workers, and instructed Warehouse Workers when their shifts would end.

63. Each week, Raj provided Rambharose and the Warehouse Workers with a timesheet to record their daily hours worked through the workweek.

64. Each week, Singh signed off on the timesheets reflecting Rambharose's and the Warehouse Workers' hours worked.

65. In mid-2022, Mahendra Lalman, a Team Lead in the Backorder section of the Internet Department, quit his job.

66. After Mahendra quit, Singh called a meeting that included Parts Authority General Manager Azaam Haniff, Parts Authority Assistant Warehouse Manager Robert (Bob) Posma, Parts Authority Internet Department Supervisor Krishna Goolcharran, and Rambharose.

67. During the meeting, Singh told Rambharose and the other meeting attendees that he needed to fill the Team Lead position in the Backorder section in the Internet Department, and offered the position to Rambharose. Rambharose asked Singh what the role change would mean for his compensation, and Singh replied that he would look into it after Rambharose started performing the Team Lead role. Rambharose accepted the Team Lead position offered by Singh.

68. Rambharose participated in Internet Department meetings in Singh's office with Singh, Satesh, Goolcharran, and Jermaine Johnson during which the attendees discussed Internet Department management, scheduling, safety, and other matters.

69. Singh directly supervised Rambharose once Rambharose became Team Lead. For example:

a. Singh instructed Rambharose how many workers he wanted to be assigned to particular tasks in the Internet Department;

b. Singh instructed Rambharose daily, either personally or through another supervisor, as to the end time for Warehouse Workers' and Direct Parts Authority Workers' shifts;

c. Singh signed off on timesheets used by Rambharose to track his hours worked and the hours worked by Warehouse Workers under Singh's supervision;

d. Singh approved and denied Rambharose's requests for days off work.

70. Once he became Team Lead, Rambharose monitored the performance of workers in the Internet Department, including both Warehouse Workers and Direct Parts Authority Workers.

71. Both Warehouse Workers and Direct Parts Authority Workers in the Internet Department inform Rambharose if they are sick or need to be absent from work, and Rambharose, in turn, reports that information to Singh or Goolcharran.

72. Rambharose developed operating procedures for the Internet Department that are utilized by both Warehouse Workers and Direct Parts Authority Workers.

73. Rambharose trains new Warehouse Workers and new Direct Parts Authority Workers who commence work in the Internet Department in the same manner.

74. Defendants assigned Rambharose a Parts Authority email address (khumar.rambharose@partsauthority.com) and access to Parts Authority computer systems, which Rambharose uses to, among other things, monitor how many car parts

the Warehouse Workers and Direct Parts Authority Workers scan on a daily basis, monitor and make changes to orders, and request out of stock items.

75. Singh requests reports from Rambharose about the performance of both Warehouse Workers and Direct Parts Authority Workers monitored by Rambharose to ensure that Warehouse Workers and Direct Parts Authority Workers are completing their duties timely.

76. Singh and other Parts Authority managers hold the power and authority to discipline, suspend, and fire Warehouse Workers.

**COLLECTIVE ACTION ALLEGATIONS**

77. Plaintiff brings this action on behalf of himself and all similarly situated Warehouse Workers who have worked for Defendants within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

78. The FLSA Collective consists of approximately one hundred fifty workers who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying the FLSA Collective overtime pay.

79. Plaintiff and the FLSA Collective have worked over forty hours per workweek, have performed virtually the same duties, were paid on an hourly basis, and have been subjected to the Defendants' common unlawful pay policies and practices depriving them of overtime pay at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

80. Defendants intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in patterns, practices, and policies violating the FLSA, including

but not limited to: (1) failing to pay the FLSA Collective overtime wages for hours worked over forty per workweek; and (2) failing to keep full and accurate records of all hours worked by the FLSA Collective, as required by the FLSA.

81. Defendants engaged in this unlawful conduct pursuant to corporate policies of minimizing labor costs and denying employees their compensation.

82. Defendants are aware or should have been aware that the FLSA required them to pay the employees an overtime premium for hours worked in excess of forty per workweek.

83. Defendants' wage payment practices have repeatedly been the subject of federal litigation and a United States Department of Labor investigation. *See, e.g.*, supra ¶ 19.

84. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiff and the FLSA Collective.

85. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated employees can be readily identified and located through Defendants' records. The similarly situated employees should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

**CLASS ACTION ALLEGATIONS**

86. Plaintiff brings the claims in this Complaint arising out Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class consisting of all similarly situated Warehouse Workers who work or have worked for Defendants in the six years prior to the commencement of this Action (the "Rule 23 Class").

87. The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

88. The size of the Rule 23 Class is at least three hundred individuals, although the precise number of such employees is unknown. Facts supporting the calculation of that number are presently within the sole control of Defendants.

89. Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

90. Common questions of law and fact exist as to the Class that predominate over questions affecting them individually including, *inter alia*, the following:

a. Whether Defendants violated the NYLL and supporting regulations with respect to compensation of the Rule 23 Class as alleged herein;

b. Whether Defendants maintained accurate records of hours worked and pay received by the Rule 23 Class as required by the NYLL;

c. Whether Defendants failed to pay minimum wages to the Rule 23 Class for all hours worked up to forty per workweek, as required by the NYLL;

d. Whether Defendants failed to pay overtime wages to the Rule 23 Class for hours worked in excess of forty per workweek, as required by the NYLL;

e. Whether Defendants failed to pay spread-of-hours pay to the Rule 23 Class per day worked that was longer than ten hours, as required by the NYLL;

f. Whether Defendants failed to provide Plaintiff and the Rule 23 Class with wage notices and accurate wage statements as required by the NYLL and WTPA; and

g. Whether Plaintiff and the Rule 23 Class have sustained damages and, if so, the proper measure of such damages.

91. Plaintiff's claims are typical of the claims of the Class he seeks to represent. Plaintiff and the members of the Class work or have worked for Defendants at various times within the applicable statutory period. They enjoy the same statutory rights under the NYLL to be paid at the statutory minimum wage rate for hours up to forty and overtime rate for all hours worked over forty in a workweek. Plaintiff and the members

of the Class have sustained similar types of damages as a result of Defendants' failures to comply with the NYLL.

92. Plaintiff and the Rule 23 Class have all been injured in that they have been under-compensated.

93. Plaintiff will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

94. Plaintiff has retained legal counsel competent and experienced in wage and hour, discrimination, and class action litigation.

95. There is no conflict between Plaintiff and the Rule 23 Class members.

96. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual Rule 23 Class members lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

97. This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**FIRST CLAIM**
**(NYLL – Unpaid Minimum Wages)**

98. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

99. Defendants are employers within the meaning of NYLL §§ 190(3), 651(6), and supporting New York State Department of Labor ("NYDOL") regulations and employed Plaintiff and the Class.

100. Before 2019, Defendants employed eleven or more employees, making them "large employers," both individually and collectively, under 12 N.Y.C.R.R. § 142–2.1(a)(1)(i).

101. The NYLL and supporting NYDOL regulations, including 12 N.Y.C.R.R. § 142-2.1, require employers to pay employees at least the minimum wage for each hour work up to forty per workweek.

102. Defendants willfully violated the NYLL by failing to pay Plaintiff and the Rule 23 Class minimum wages.

103. As a result of Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**SECOND CLAIM**
**(FLSA – Unpaid Overtime Wages)**

104. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

105. Defendants are employers within the meaning of 29 U.S.C. § 203(d) and 207(a) and employed Plaintiff and the FLSA Collective.

106. Defendants were required to pay Plaintiff and the FLSA Collective one and one-half (1½) times their regular hourly wage rates for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

107. Defendants failed to pay Plaintiff and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

108. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective the proper overtime wage rate.

109. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiff's and the FLSA Collective's compensation.

110. As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**THIRD CLAIM**
**(NYLL – Unpaid Overtime Wages)**

111. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

112. Under the NYLL and supporting NYDOL regulations, including 12 N.Y.C.R.R. § 142-2.2, Defendants were required to pay Plaintiff and the Rule 23 Class one and one-half (1 ½) times their regular rates of pay for all hours worked over forty per workweek.

113. Defendants failed to pay Plaintiff and the Rule 23 Class the overtime wages to which they were entitled under the NYLL and its supporting regulations.

114. Defendants willfully violated the NYLL and its supporting regulations by knowingly and intentionally failing to pay Plaintiff and the Rule 23 Class overtime wages.

115. As a result of Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**FOURTH CLAIM**
**(NYLL – Unpaid Spread-of-Hours Pay)**

116. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

117. Defendants willfully failed to pay Plaintiff and the Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked shifts spanning over ten hours, in violation of the NYLL and its supporting NYDOL regulations, including 12 NYCRR § 142-2.4.

118. As a result of Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid spread-of-hours pay, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**FIFTH CLAIM**
**(NYLL WTPA – Failure to Provide Wage Notices)**

119. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

120. The NYLL's WTPA requires employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

121. In violation of NYLL § 195(1), Defendants failed to furnish Plaintiff at the time of hiring, or whenever his rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

122. As a result of Defendants' violations of NYLL § 195(1), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1–b).

**SIXTH CLAIM**
**(NYLL WTPA – Failure to Provide Wage Statements)**

123. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

124. The NYLL's WTPA requires employers to provide employees with an accurate wage statement with each payment of wages.

125. Defendants failed to provide Plaintiff and the Rule 23 Class with a wage statement at the end of every pay period accurately listing, *inter alia*, the regular and overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of NYLL § 195(3).

126. As a result of Defendants' violations of NYLL § 195(3), Plaintiff and the Rule 23 Class are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Rule 23 Class, respectfully requests that this Court:

a. certify this case as a collective action on behalf of the FLSA Collective described herein and authorize the prompt issuance a notice pursuant to 29 U.S.C. § 216(b) to all prospective members of the FLSA Collective apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

b. certify this case as a class action pursuant to Rule 23 for the Rule 23 Class described herein, certify Plaintiff as the representative, and designate Plaintiff's counsel as Class Counsel;

c. declare that Defendants have violated the minimum wage provisions of the NYLL and supporting regulations;

d. declare that Defendants have violated the overtime wage provisions of the FLSA, NYLL, and supporting regulations;

e. declare that Defendants have violated the spread-of-hours provision of the NYLL and supporting regulations;

f. declare that Defendants have violated the wage notice and wage statement provisions of the NYLL's WTPA;

g. declare that Defendants' violations of the FLSA and NYLL were willful;

h. enjoin and permanently restrain Defendants from further violations of the FLSA and NYLL;

i. award Plaintiff and the Rule 23 Class damages for unpaid minimum wages and wage deductions;

j. award Plaintiff and the Rule 23 Class damages for unpaid overtime wages;

k. award Plaintiff and the Rule 23 Class damages for unpaid spread-of-hours pay;

l. award Plaintiff, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and NYLL;

m. award Plaintiff and the Rule 23 Class damages as a result of Defendants failure to furnish wage notices and wage statements pursuant to the NYLL's WTPA;

n. award Plaintiff, the FLSA Collective, and the Rule 23 Class pre- and post-judgment interest under the NYLL;

o. award Plaintiff, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs pursuant to the FLSA and NYLL; and

p. award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: New York, New York
December 23, 2025

PECHMAN LAW GROUP PLLC

By: *<u>/s/ Louis Pechman</u>*
Louis Pechman
Galen C. Baynes
Georgia Decker
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
baynes@pechmanlaw.com
decker@pechmanlaw.com
*Attorneys for Plaintiff and the Putative FLSA Collective and Rule 23 Class*